WILLIAM R. SHEDD *v.* JOHN POWERS AND JOHN POWERS, JR.

### Constructive possession.

A constructive possession limited to the bounds given in the deed under which the party claimed, and not extended to an old line beyond, to which, for a part of the distance, there had been more than fifteen years actual occupancy.

TRESPASS for cutting timber. The cause was referred, and, before the referee, the only question was whether the cutting complained of was on lot No. 137, in ——————, owned by the plaintiff, or on lot No. 136, which lay south of and adjoining No. 137, the north part of which was owned by the defendants.

There was no dispute as to the north-east, south-west and south-east corners of lot No. 136, but there was as to the north-west corner. The plaintiff claimed that a maple tree, at the point C, as indicated on a plan attached to the referee's report, was the corner; while the defendant claimed the corner to be at the point B, on said plan. The cutting was at the west end of the strip of land between the lines A B and A C,—A being the conceded north-east corner of lot No. 136, and A B its north line, as claimed by the defendants, and A C the north line, as claimed by the plaintiff, as indicated on said plan.

On the 9th of December, 1818, one Samuel Powers was in possession of and owned lot No. 136. On that day he conveyed, by deed, to John Powers, one of the defendants, sixty acres from the north side of the lot; and immediately after the execution of that deed, the said Samuel and John, the grantor and grantee, run out said sixty acres, marking the maple at C, as the north-west corner of the lot, and of the sixty acres. The defendants claimed to extend his line to B, which was some eighteen rods north of C, and would give him about seventy-one acres.

When that part of the town in which these lots are located was divided into severalty, and these lots run out, the range lines only were run, which were the north and south lines, and the corners marked. The defendants proved that between sixty and seventy years ago a line was run and marked from A to B, which the referee found was run as and for the dividing line between lots Nos. 136 and 137, which were one hundred acre lots. Soon after the execution of said deed of December 9th, 1818, the defendant John

Powers, senior, commenced clearing in the north-east corner of lot No. 136, and more than fifteen years prior to the commencement of this suit had cleared up to the line A B, which was spoken of as the spotted line, for some fifty or sixty rods west from the northeast corner, and had ever since occupied up to said line the distance so cleared, claiming that to be the true line. This clearing did not extend so far west, by many rods, as where the trespasses complained of were committed. The north-westerly part of lot No. 136 and the south-westerly part of 137 remained wooded and unenclosed. The plaintiff claimed that the maple was the true corner of these lots, and the referee found it to be the corner as originally marked.

The spotted line, after it leaves the cleared land, runs quite a distance in the woods before it intersects the range line, and in reference to this portion of the line and the north-west corner of lot No. 136, within fifteen years next before the commencement of this suit, the defendant Powers, senior, said to the plaintiff's grantor that he wished to agree upon and establish the line and corner between them.

Whether, under the circumstances and facts above stated, the maple corner (C) or the spotted line (A B) should settle the rights of the parties, the referee referred to the court. If the maple corner governed, he found for the plaintiff to recover $20 damages, and his costs, but, if the spotted line governed, he found for the defendants to recover their costs.

The county court, ———— Term, 185–, rendered judgment on the report of the referee, in favor of the plaintiff.

Exceptions by the defendants.

*P. T. Washburn* and *J. Potts* for the defendants.

The spotted line has become, and is the division line between the lots. This cannot be disputed, so far as the clearing extends, by reason of the defendants' actual occupancy and claim of title.

And beyond the clearing the defendants have had a constructive possession, which, by acquiescence and lapse of time, has become a title. This constructive possession operated a dissezin of the owners of lot No. 137, even if that lot originally extended south of the spotted line, and its continuance for fifteen years has per-

fected a title in the defendants; *Whitney* v. *French*, 25 Vt. 663; *Swift* v. *Gage*, 26 Vt. 228; *Buck* v. *Squiers*, 23 Vt. 499; *Crowell* v. *Bebee*, 10 Vt. 35; *French* v. *Pearce*, 8 Conn. 439; *Spaulding* v. *Warren*, 25 Vt. 321; *Fitch* v. *Mann*, 8 Barr 503.

Even if the plaintiff have title to the *locus in quo*, the report shows no possession in him, and therefore he cannot maintain trespass; *Wheeler* v. *Hotchkiss*, 10 Conn. 225. And, if trespass will lie, the plaintiff can only recover nominal damages for the disseizin; *Stevens* v. *Hollister*, 18 Vt. 294.

*A. M. Dickey* for the plaintiff.

The fact that the defendants cleared down to the spotted line at one corner, and occupied to that line, over fifteen years, would not give him possession, constructively, to that line the entire length of the lot; he could acquire a title by possession to no more than he actually enclosed and occupied, for his deed only carried him to the maple tree; *Chandler* v. *Spear*, 22 Vt. 388.

The report shows that there never was any adverse possession of the premises in question, for it finds that one of the defendants, within fifteen years, applied to the plaintiff's grantor to go and agree with him (the defendant) and establish that corner and the true line of these lots.

There was no mutual recognition of the spotted line as the true line between these lots, by the plaintiff and plaintiff's grantor, and the defendants, and, therefore, it cannot govern.

The opinion of the court was delivered by

REDFIELD, CH. J. This is a case where there is considerable ground for debate in regard to the extent of the defendant's possession upon lot No. 136. But as the referee finds that the true corner was at the maple tree, and that the defendant's deed was, in fact, only intended to convey the land to that corner, we must, we think, regard the constructive possession as limited to the actual limits of the lot. The deed only described sixty acres in the north part of the lot. The lot, in fact, only extended to the line " A C." Whatever possession the defendant had beyond the actual limits of the lot, he must have obtained independent of his deed. His acts, so far as they can be, should be referred to his deed. And,

the deed, being upon record, was distinct notice to everybody that he did not claim beyond his deed.

The line from A to B being marked "as and for the dividing line," does not show that these parties so regarded it. There is nothing in the case to show that the defendant so regarded it, except his claiming up to it, at the east end, where it nearly coincided with the true line, and the difference might not, at first, have been noticed. And, taking all the facts proved, it does not seem very obvious that the plaintiff would be bound to regard the defendant as ever claiming this spotted line as the true line. And, when it is considered that, within fifteen years, the defendant admitted the north-west corner was not established, and said "he wished to agree upon and establish the line and corner between" him and the plaintiff's grantor, we must conclude there is not enough in the case to show a marked and intelligible claim of possession and property in the land, as far as the spotted line.

We have no doubt one may have constructive possession of land, independent of paper title or claim, and without the literal *possessio pedis* upon any part of the land. But it should be marked by unmistakable *indicia* of claim, of use and right to control. A fence is always sufficient for this purpose. A mere marked line has not, of itself, been yet held sufficient. But in the absence of all paper title, probably it might be so made as to be equally indicative of claim of title, without any other monument. But where there is paper title, as in the present case, it requires very distinct occupancy to extend the possession beyond the limits described in the deed, inasmuch as the deed, while it is notice of claim to the extent of the boundaries therein set forth, is also a distinct disclaimer of any further pretensions. The owner of the adjacent lot is then put off his guard, as to any merely equivocal acts. He is naturally led to put the most favorable construction upon them as explained by the deed. In this view, we think there was nothing which amounted to constructive possession of the land in dispute.

Judgment affirmed.